[No. 17375. Department Two. December 6, 1922.]

*In the Matter of the Partnership Estate of* CHRIS
GRECORIN, *Deceased.*

JAMES CARKONEN, *as Administrator etc., Respondent,*
v. MYRTLE GRECORIN, *as Administratrix
etc., Appellant.*[1]

PARTNERSHIP (95)—ACCOUNTING—EVIDENCE—SUFFICIENCY. Findings that, in a partnership in which the accounts were kept in a crude manner for twenty years, the partners struck a balance on a certain date, are not sustained where the books clearly indicate that the surviving partner had overdrawn on that date, the overdraft does not appear to have been paid, and the testimony as to offsets lacks in convincing force, which are not evidenced by the books.

SAME (95)—ACCOUNTING—WAIVER BY LAPSE OF TIME. Lapse of time, without demand for repayment, is not a waiver by one partner of his right to recover a balance shown on the books, where complete harmony had always existed and balances or settlements had never been struck or made at any stated times.

[1]Reported in 210 Pac. 785.

SAME (95)—ACCOUNTING—EVIDENCE—FAILURE TO IDENTIFY CREDITS. Where partnership books were kept in a crude manner and unintelligible to experts, the failure of the books to identify a sum, admitting that it was received by the partner keeping the books, does not show that he converted the same, where it may have been included in items entered and there is nothing to show the partnership did not receive the benefit of it.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 24, 1922, upon findings in favor of a surviving partner, in a proceeding in probate settling a partnership estate. Reversed.

*Lady Willie Forbus,* for appellant.
*Revelle & Revelle,* for respondent.

TOLMAN, J.—This appeal is from a decree entered in the course of the administration of a partnership estate, by which it is adjudged that the surviving partner shall receive the sum of $3,118 to equalize the drawings of the partners, before the remainder of the estate shall be distributed to the surviving partner and to the heir of the deceased partner.

The partnership, composed of James Carkonen and Chris Grecorin, came into existence about the year 1906, conducting a lunch room and restaurant business. About the year 1910, the previous business was disposed of, and the partnership engaged in the saloon business, which it continued until the close of the year 1915. Thereafter the partnership conducted a pool room and soft drink bar until the close of the year 1919, when the business was sold out. No steps were taken to dissolve the partnership, and no settlement or distribution of the partnership assets had been made up to the time of the death of Grecorin, which occurred in August, 1920. Thereafter respondent was appointed and qualified as administrator of the partnership estate, and appellant was appointed and qualified as adminis-

tratrix of the estate of the deceased partner. Upon the filing of a report by the administrator of the partnership estate, claiming that the deceased partner had drawn more than $5,000 in excess of the amounts drawn by the surviving partner, appellant filed objections thereto, and a hearing was had thereon, which resulted in the entering of the decree appealed from.

Experts on both sides examined the books of the partnership, which had been kept by the deceased partner, and agreed that, because of the manner in which the books were kept, no accurate audit could be made, and that the data therein given was wholly insufficient to afford a basis for an accurate report as to the affairs of the copartnership.

The trial court rather accurately described the situation in the following words:

"Their books which are produced here do not conform to any standard or rule of accountancy. They kept the books in a crude way, which satisfied them. They were friends, dealing with each other on the basis of mutual confidence, and they did many things, which if they had anticipated the record was to be afterwards reviewed by certified accountants, they would have done differently. They had a right to settle up their own affairs before going hence. So I think we have a situation of two men engaged in a business of considerable complexity, covering a period of nearly twenty years, where they did not keep their accounts according to the standard of any usual form of bookkeeping, and leaving behind in the partnership these incomplete records, crude and inaccurate, which could be straightened out if both parties were here, but in the absence of one partner the surviving partner's testimony would not be accepted as the final word."

With this much, we agree. The court then continued:

"Now, with all those infirmities in the record of the case we arrive at a point, January 1st, 1916. I believe that the parties will have fairer justice between them

if we start at that point, because we know, then, that there was between them an account stated, in a measure, when they entered the record on page 80 of this book, exhibit 'A'. . . . January 1st, 1916, it seems to me must be taken as a new starting point for the parties as being as nearly accurate a common starting point as any we can agree upon. At that time we find this item of $1,086.80 which means that much was on one side of the ledger, but prior to that time there had been a statement that Carkonen was owing Grecorin $2,493.72. That item has troubled me all through the hearing of this case. There is the testimony on the part of Mr. Carkonen that he made a settlement with Mr. Grecorin, his partner, I think, in 1915 or sometime along then, and that the accounts were squared, and that was stated to be settled between them. If we accept that testimony it of course would be conclusive, but we are not, I think, obliged to accept his testimony of conversations and transactions had with the deceased, which the statute prohibits. . . . As strong as that, or nearly as strong as that, is the relation of the parties subsequent to that time. There were some five years after that in which both parties lived and had relations with each other, and never again was that entry of $2,493.72 referred to, we do not hear of any demand made or any suit begun or any proceedings for the enforcement by Grecorin against his partner of that item of $2,493.72. It would seem as though it was waived, as though there must have been some settlement between them.''

After a careful examination of the entire record, we are convinced that the trial court fell into error in fixing January 1, 1916, as the starting point for the accounting. It may be, and probably is, true that appellant waived the benefit of the statute, and made admissible the testimony of respondent as to transactions between the partners, but that testimony is not convincing. The books plainly show that, at intervals, the partners cast up their accounts, ascertained the amount each had drawn, and made entries to the effect

that one had overdrawn the other a stated amount, one-half of such overdraft being carried as a credit to the individual account of the partner entitled thereto; the entry being O.K.'d and signed by both of the partners. The index to the ledger and the entries above referred to all show that the individual accounts of the partners were kept on certain specified pages of the ledger. The ledger produced in evidence shows that the pages specified as containing the individual accounts are blank, and these pages bear mute evidence that someone has carefully removed the original pages and bound in new and blank pages with similar numbers. The evidence shows that each partner had ample opportunity to so mutilate the books, but there is no evidence, either direct or circumstantial, that either did so. It is unnecessary to attempt to fix the responsibility, however, because the individual accounts in the ledger were not original entries, and the facts can be supplied from the original entries which purport to have been posted to the individual accounts. These original entries clearly indicate that, prior to January 1, 1916, Carkonen had overdrawn, and there was then due from him to Grecorin at least $2,493.72. Later entries indicate that, thereafter, Grecorin drew in excess of Carkonen, probably with the idea of thus offsetting and balancing the individual accounts. Nowhere does it appear from the books that Carkonen ever paid the overdraft existing against him prior to January 1, 1916, and his testimony that money borrowed individually by Grecorin for the partnership use, because not shown in the books, in some way, either by its receipt or by its re-payment, created a liability against Grecorin, which it was agreed between the partners should offset and be treated as payment of Carkonen's overdraft, fails of convincing force; especially so as the items affecting the individual accounts shown on the books were O.K.'d

and signed by both partners, and the asserted repayment is not evidenced by any entry whatever.

Nor can we think that the lapse of time, without a demand for repayment, is evidence of waiver. So long as the partnership continued, harmony existed between its members, and each was privileged to draw from time to time according to his needs; it would be quite out of the ordinary to expect to find any record of a demand for payment or a suit to enforce the liability. Neither does the bringing forward of the item of $1,086.80 indicate a new starting point with reference to the individual accounts. At the time this item was brought forward, the partners had closed out one business, and were beginning another, and they simply brought forward on their books the unpaid liabilities of the old business without in anywise changing the individual accounts on the ledger. Since it was the same partnership, no matter what the business engaged in, we can see no reason for any entry on January 1, 1916, restating what the individual accounts already showed, and reindicating what was already indicated over the signature of both partners.

We think, also, the evidence fails to show that Grecorin should be charged with the item of $850 said to have been received by him from Laros & Panos. Admitting that it was a partnership asset and that it was paid to Grecorin, still he was the man, according to the partnership custom, who should have received it, and we find nothing in the evidence to indicate that the partnership did not receive the benefit of the payment. True, the item cannot be identified on the books, but it may still be there included with other items, so as to make identification now impossible; or it may have been paid out for partnership purposes without entry on either side, just as were bank loans. As these books were kept, the failure to enter this item raises

no presumption that it was by Grecorin appropriated to his own use.

We conclude, therefore, that the trial court should not have charged the deceased partner with this item of $850, and should have charged the surviving partner with the $2,493.72 which he owed to Grecorin prior to January 1, 1916.

The judgment appealed from is reversed, with instructions to enter judgment in accordance with the views herein expressed.

PARKER, C. J., FULLERTON, MAIN, and HOVEY, JJ., concur.